USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
MAURICE DAVIS,                  :
                                :
            Plaintiff,          :    08 Civ. 0435 (LAP)
                                :
        v.                      :    MEMORANDUM & ORDER
                                :
THE CITY OF NEW YORK HEALTH     :
AND HOSPITALS CORPORATION,      :
JUNE BOBCOMBE and THE CITY OF   :
NEW YORK,                       :
                                :
            Defendants.         :
------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

　　　　Plaintiff Maurice Davis brought this action against New York City Health and Hospitals Corporation, Harlem Hospital Center, Metropolitan Hospital Center (collectively "HHC"), the City of New York and June Bobcombe, the Associate Director of Nursing at Harlem Hospital (collectively "Defendants"). Davis alleges that the Defendants acted in violation of the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., 42 U.S.C. § 1985(2), § 296 of the New York Executive Law (the "NYS Human Rights Law"), the New York City Administrative Code § 8-107.1 (the "NYC Human Rights Law"), and her First Amendment rights. Before the Court is Defendants' motion for summary judgment on all of Davis's

1

claims.[1]  For the reasons set forth herein, the motion is GRANTED.

## I.  BACKGROUND

Davis alleges that her former employer, HHC, denied her reasonable accommodations for her disabilities.  (Compl. ¶ 44.)  Davis additionally alleges that the denial of her request for an accommodation was in retaliation for her complaints about allegedly improper practices used in the Eye Clinic at Harlem Hospital and therefore violated her First Amendment right of free speech.  (Pl. Br. at 9.)

Davis began working at HHC in June of 1968.  (Def. Rule 56.1 Statement ¶ 1.)  In May 2004, Davis requested to be transferred out of the psychiatric ward and cited a permanent injury to her wrist and increased hypertension as the reasons.  (Pl. Aff. in Opp.)  In June 2004, Davis became head nurse of the Eye Clinic at Harlem Hospital.  (Id. ¶ 8.)  Davis describes the

---

[1] Plaintiff concedes that she did not allege a cause of action under New York State Labor Law § 740(2)("Whistleblower Law") in the complaint but asks that her other claims be construed to include one or that she be permitted to amend.  (Plaintiff's Memorandum of Law in Opposition, 13) As parties may not amend complaints by way of summary judgment briefing, no claim under that section is before the Court.  Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).  In addition, it is far too late to permit amendment, and plaintiff provides no explanation for the delay.  See Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000); Ansam Assocs., Inc. v. Cola Petroleum, 760 F.2d 442, 446 (2d Cir. 1985).

2

reassignment to the Eye Clinic as an accommodation; defendants disagree with this characterization. (See Def. Rep. Ex. A, Patel. Dep.) ("The accommodation was not giving her the eye clinic. . . . The accommodation was giving her not the psyche and the detox units.").)

On December 3, 2004, Dr. Linsy Farris wrote a letter to Dr. Glendon Henry, Medical Director of Harlem Hospital, requesting Maurice Davis's removal from the Eye Clinic. (Pl. Ex. D.) The letter stated that Dr. Farris received numerous verbal complaints from the Eye Clinic staff and physicians about both Davis's performance and demeanor.

In April and May of 2005, Davis complained about Registered Nurses not following proper procedures within the Eye Clinic. (Pl. Ex. C.)

Davis's performance was criticized in February 2006 by Dr. Ko Busby. On February 9, 2006, Dr. Busby expressed his concerns about Ms. Davis's performance in a letter to Laureen Goodridge, the Director of Nursing at HHC. (Def. Ex. E.) There, Dr. Busby stated that Davis told a patient who was experiencing a negative reaction to laser surgery that she could not see a physician for several days, that this statement by Davis was incorrect and could have had serious consequences for the patient. (Id.)

In March 2006, Davis was transferred from her position in the Eye Clinic to the Neurology Department as a staff nurse.

3

(Compl. ¶ 34; Rule 56.1 Statement ¶ 6.) On March 23, 2006, Davis's treating physician, Gerald Gaughan, wrote a note indicating Davis's "disabilities due to injury involving the left wrist and hand." (Def. Ex. F.) Dr. Gaughan wrote "due to on the job injury, this patient has permanent disabilities due to injury involving the left wrist and hand. She should continue the left hand splint. Limit lifting, pushing and pulling with the left hand to light weight (10 lbs) no restraining is permitted. Proper chair and high back with arm rests to do paperwork. 15-20 minute[s] interval continuous sitting and standing due to spine injury. Please accommodate this patient. Gerald Gaughan, M.D." (Id.) Of note here is the timing. Davis essentially asserts that she was demoted in March, 2006, and thereafter notified defendants of an injury that required accommodation. (Pl. Br. at 2.)

On April 6, 2006, Shivani Soni, Deputy Director of the Network Office of Equal Employment Opportunity and Affirmative Action, informed Davis that the request for a special chair was granted but all other requested accommodations were denied. (Def. Ex. G.) As an alternative, Davis was offered a temporary leave of absence in order to "remedy [] impairments that prevent [Davis] from performing [] essential job functions." (Id.)

On April 7, 2006, HHC placed Davis on a pre-hearing suspension from work due to multiple complaints regarding her

4

performance. (Pl. Ex. F.) Davis returned to duty on June 12, 2006, subject to medical clearance. (Pl. Ex. I.) Davis was to report to the Neurology Department, where she worked as a staff nurse prior to her disability. (Id.) On July 24, 2006, the Assistant Personnel Director informed Davis in writing that, in light of further investigation, her suspension was rescinded. (Pl. Ex. G.)

In the midst of Davis's suspension and subsequent rescission, Davis and HHC maintained a dialogue regarding her abilities to perform her essential work duties. On June 15, 2006, the Office of Equal Employment Opportunity and Affirmative Action sent Davis a letter detailing her responsibilities as a staff nurse in the Neurology Department. (Pl. Ex. J.) As part of her job duties as a staff nurse, Davis was to perform duties associated with direct patient care. (Id.) The letter stated "Accordingly, based on the medical documentation provided to this Office on or about March 23, 2006 and your summary of your limitations during our June 12, 2006 conversation, you apparently cannot perform your essential job functions either with or without an accommodation at this time." (Id.) The letter also discussed Davis's options, including a leave of absence in light of the fact that she could not perform her "essential job functions" either with or without an accommodation. (Id.)

5

Pursuant to the doctor's notes Davis submitted to HHC, HHC arranged for Dr. Benjamin Nachamie, an independent orthopedic physician, to examine and evaluate Davis.  (Pl. Ex. L.)  On August 4, 2006, Dr. Nachamie examined Davis and thereafter sent a written medical evaluation to Jason Johnson, the Assistant Personnel Director at the Metropolitan Medical Center. (Pl. Ex. M.)  Dr. Nachamie reviewed the duties of a head nurse and stated that he saw nothing in Davis's records or examination that would preclude her from performing all of those duties.  Id. Subsequently, it appears that Dr. Nachamie evaluated Davis's ability to perform the duties of a staff nurse and concluded that she was unable to do so. (Pl. Ex. N.)  Several letters were exchanged between Mr. Johnson and Dr. Nachamie regarding Dr. Nachamie's evaluation.  In Mr. Johnson's September 11, 2006 letter to Dr. Nachamie, he stated "The <u>Review of Duties of a Staff Nurse</u> section appears to be unclear to me in that you state 'Maurice Davis, R.N. has made it clear to me that she can only supervise lifting and transfer/transport of patients and not actually push-pull or lift because of her physical condition.  Therefore she cannot perform all of the duties of the functions of a staff nurse.'  With all due respect we need to know if that is <u>your</u> medical assessment or Ms. Davis'." (Pl. Ex. N.)  A subsequent letter from Mr. Johnson to Dr. Nachamie, dated September 28, 2006, requests further clarification but

refers to the duties of a <u>head nurse</u>. (Id.) On October 19, 2006, Dr. Nachamie wrote Mr. Johnson and expressed his confusion with respect to exactly what title his assessments should be based upon. (Pl. Ex. O.) These letters do not indicate confusion with respect to the functions of the specific jobs; they reflect miscommunication about Davis's pre-disability job title.

On November 28, 2006, Davis reported to be cleared to return to duty, and, based upon the three medical evaluations she submitted, Dr. Eldon Redwood, the Occupational Health Service Director at HHC, wrote to Mr. Johnson and said that Davis could only be cleared to return to her then current job title[2] if the listed accommodations were granted. (Pl. Ex. S.)

On January 2, 2007, Jeannith Sosa from the Office of Equal Employment Opportunity and Affirmative Action informed Davis that HHC could not offer her a vacant position as head nurse. (Pl. Ex. W.) Davis was placed on a medical leave of absence not to exceed one year from that date. Id. Davis continued her medical leave until her retirement; she retired from HHC

---

[2] The Court notes that at the time of the November 28, 2006 evaluation, Davis's last held title was that of a staff nurse in Neurology. (Compl. ¶ 34; Def. Local Rule 56.1 Statement ¶ 6.) The parties have submitted no documents indicating otherwise. Jeannith Sosa sent Davis a letter dated November 30, 2006 that invited discussion regarding Davis's abilities to perform her duties as a Head nurse. (Pl. Ex. T.) Many of the exchanges inconsistently use the titles "head nurse" and "staff nurse."

effective in either February or March of 2009. (Def. Local Rule 56.1 statement ¶ 12.)

## II. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing language of previous Rule 56(c)). The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. See Celotex, 477 U.S. at 323; see also FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994). When making this determination, a court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253 (2d Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Lucente, 310 F.3d at 253 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

To survive summary judgment "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 586

8

n.11 (quoting Fed. R. Civ. P. 56(e)). "Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

When a non-moving party fails to respond to a motion for summary judgment, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co., 373 F.3d at 244).

### B.  Davis's ADA and Rehabilitation Act Claims

Under the ADA, "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). "To establish a prima facie case under the ADA or the Rehabilitation Act, 'plaintiff must show by a preponderance of the evidence that: (1) [the] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential

functions of the job, with or without reasonable accommodation; and (4) [the plaintiff] suffered an adverse employment action because of [her] disability.'" Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).

Defendant HHC is a corporation that is a covered employer, as defined in the ADA. 42 U.S.C. § 12102. For purposes of this motion only, Defendants do not argue that Davis was not disabled within the meaning of the ADA. (Defs.' Br. at 6.)

The crux of the ADA and Rehabilitation claims, therefore, is whether Davis was "otherwise qualified" to perform her job at HHC. Davis bears the burden of production and persuasion with respect to whether she is "otherwise qualified." Stamey v. NYP Holdings, Inc., 358 F. Supp. 2d 317, 323 (S.D.N.Y. 2005). Davis is "not 'otherwise qualified' unless [s]he is able, with or without reasonable accommodation, to perform the essential functions of the job in question." Id.

While Davis bears the burden of production and persuasion with respect to demonstrating she is otherwise qualified, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." D'Amico v. City of N.Y., 132 F.3d 145, 151 (2d Cir. 1998). "Although the term 'essential functions' is not defined by the ADA, regulations promulgated by the Equal

10

Employment Opportunity Commission indicate that it encompasses 'the fundamental job duties of the employment position.'" McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 98 (2d Cir. 2009). "The determination of essential job functions is a fact-specific inquiry." Wenner v. City of N.Y. Dep't of Sanitation, No. 92 Civ. 9389, 1996 WL 30289, at *3 (Jan. 24, 1996) (citing Hall v. U.S. Postal Serv., 857 F.2d 1073, 1079 (6th Cir. 1988)). "The Court must deny summary judgment where . . . questions of fact exist as to whether particular tasks were essential functions of a plaintiff's position." Id.

Issues of fact do not exist on this issue here, however. The Defendants assert that direct patient care is an essential function of both jobs of staff nurse and head nurse, (Def. Br. at 6-7.; Def. Reply Br. at 3, n. 1), and have submitted Generations & Northern Manhattan Network Functional Job Descriptions for the functional titles of head nurse and staff nurse, (Def. Ex. L; Def. Ex. M.). The head nurse description lists among the head nurse's responsibilities "[d]elivers direct [patient] care when required" and "[p]rovides patient care when necessary." The staff nurse description includes under responsibilities "[p]articipates and is able to function effectively, both individually and as a team member, during crisis and emergency situations," "participates in emergency codes . . . ," "[p]erforms cardio-pulmonary resuscitation, when

11

necessary," and "assists with transfer transport of patients to units, procedures, etc." Id.

Plaintiff's pre-disability assignment was to a staff nurse position. Thus, her disabilities are measured against the essential functions of a staff nurse. Comparison of those responsibilities to the limitations that plaintiff and her physician presented to the Network – inability to restrain a patient, inability to lift more than ten pounds or to push or pull a gurney or wheelchair and an inability to sit or stand for more than fifteen to twenty minutes at a time [(Def. Ex. F; Def. Ex. H)(Dr. Gaughan 3/27/06 note; Sosa letter dated November 30, 2006; Calistro Reply Decl., Ex. B at 112 (Patel Dep.)] – demonstrates that plaintiff was unable to perform the essential functions of a staff nurse, and Ms. Patel so testified. (Def. Rep. Decl. Ex. A. (Patel Dep.)("So, that the limitations seems to be contrary to the findings that she can perform the essential functions of her job . . .")). Of course, that judgment of essential functions is entitled to substantial deference. D'Amico, supra, 132 F.3d at 151.

Davis's requested accommodations preclude her from providing direct patient care because she cannot restrain patients herself or assist in transporting them. While the court does not view plaintiff's burden with respect to demonstrating she can perform the essential functions of her job

12

with a reasonable accommodation as a heavy one, a "reasonable accommodation does not mean elimination of any of the job's essential functions." Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991) (internal quotation marks omitted) (quoting Hall, 857 F.2d at 1078). Additionally, Davis's request for a promotion to a head nurse position is unreasonable. McBride, 583 F.3d at 98 ("An accommodation sought in the form of an alternative placement may not be such that reassignment would involve a promotion."). Davis's requests both eliminate direct patient care from her job and involve a promotion and, thus, are unreasonable. Furthermore, even if Davis's pre-disability assignment was head nurse, she would be unable to perform all of the essential functions of that position because the duties of a head nurse include direct patient care.

Plaintiff asserts that Kittie McGee testified that three other nurses with similar conditions to those of Plaintiff had been accommodated. (Pl. Br at 7). The referenced testimony, however, does not support Plaintiff's assertion. At most, Ms. McGee testified that three nurses were accommodated: one with injuries to the leg and feet who limped; one with generalized back injury; and one with injuries to his hands. (Def. Rep. Decl. Ex. D. (Calistro Dep.)) There was no testimony proffered on the nature of the disabilities or whether they were similar to Plaintiff's disabilities. Thus, the testimony is wholly

13

irrelevant. Accordingly, Defendants' motion for summary judgment with respect to Davis's claims based on the ADA and Rehabilitation Act is granted.

        C.    <u>Davis's NYS and NYC "Human Rights Laws" Claims</u>

The NYS Human Rights Law and ADA are similarly construed because of the "seemingly clear legislative purpose to enact a definition of disability coextensive with comparable federal statutes." <u>Reeves v. Johnson Controls World Servs., Inc.</u>, 140 F.3d 144, 155 (2d Cir. 1998). Both the NYS Human Rights Law and the NYC Human Rights Law diverge from the ADA with respect to the scope of the definition of "disability." See <u>Burton v. Metrop. Transp. Auth.</u>, 244 F. Supp. 2d 252, 258 (S.D.N.Y. 2003).[3] Here, the Court has concluded that Davis is disabled within the narrower definition of the ADA, therefore the Court concludes that Davis was disabled under the NYS and NYC Human Rights Laws.

The NYS and NYC Human Rights Laws have very similar requirements with respect to the ADA's "essential functions" test. <u>Id.</u> (holding that the NYSHRL requires the same inquiry

---

[3] In <u>Burton</u>, the court states "it is well-settled that the NYSHRL definition of disability is broader than the federal definition." 244 F. Supp. 2d at 258. The Court goes on to say "the NYCHRL should be interpreted in accord with state, not federal law; as in the NYSHRL, there is no requirement that the impairment 'substantially limit' the person in some major life activity, and thus the requirement is broader than the ADA." <u>Id.</u>

14

with respect to essential functions as the ADA, and the NYCHRL provides for "an affirmative defense roughly equivalent to the ADA and NYSHRL 'essential functions' test.") Davis's Human Rights Laws claims fail, as did her ADA claim, because Defendants have demonstrated that she could not perform the essential functions of her job, with or without reasonable accommodation.

### D. Abandoned Claims

Davis did not submit any opposition to Defendants' motion to dismiss her conspiracy claims under 42 U.S.C. § 1985 and her claims against individual Defendant June Bobcombe on the ground of qualified immunity. Therefore, Davis's conspiracy claims and all claims against Defendant June Bobcombe are dismissed as abandoned. See Marache v. Akzo Nobel Coatings, Inc., No. 08. Civ. 11049, 2010 WL 908467, at *15 (S.D.N.Y. Mar. 12, 2010) (finding a claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's motion for summary judgment).

III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [dkt. no. 32] is GRANTED in its entirety.

SO ORDERED.

Dated:    New York, New York
          September 29, 2011

                                        _____
                                        LORETTA A. PRESKA, Chief U.S.D.J.